

**FILED**

Jun 13 2017, 11:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew R. Shipman
Bloom Gates Shipman & Whiteleather, LLP
Columbia City, Indiana

ATTORNEYS FOR APPELLEES

Stephen R. Snyder
Randall L. Morgan
Snyder Morgan Federoff &
Kuchmay LLP
Syracuse, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Epworth Forest Administration Committee, Inc., *Appellant-Defendant,* v. Gerry Lee Powell and Patricia Ann Powell, *Appellees-Plaintiffs.* | June 13, 2017 Court of Appeals Case No. 43A03-1610-MI-2332 Appeal from the Kosciusko Circuit Court The Honorable Michael W. Reed, Judge Trial Court Cause No. 43C01-1602-MI-47 |

**Najam, Judge.**

## Statement of the Case

[1] Epworth Forest Administration Committee, Inc. ("EFAC") appeals the trial court's judgment, following a bench trial, for Gerry Lee Powell and Patricia

Ann Powell on the Powells' complaint against EFAC and Robert Miller and Deborah Miller.[1]  This appeal arises from more than twenty-six years of litigation in the Kosciusko Circuit Court regarding rights of access to Webster Lake in Kosciusko County.  In this appeal, the Millers sought to have a second boat lift added to their pier on Webster Lake.  To accommodate that desire, the Millers petitioned EFAC to remove the Powells' pier on the lake.  EFAC agreed to do so, and the Powells filed suit and obtained injunctive relief before the court entered a final judgment for the Powells.  EFAC now appeals that judgment and raises a single issue for our review, namely, whether the trial court erred when it did not accept EFAC's interpretation of prior orders of the court.  We affirm the court's judgment for the Powells.

## Facts and Procedural History[2]

[2]    Webster Lake is a lake in the Epworth Forest subdivision in Kosciusko County. Since 1991, rights of access to Webster Lake by onshore and offshore property owners have been litigated in the Kosciusko Circuit Court.  Pursuant to various court orders in that litigation, EFAC is now empowered[3] to administer, subject to certain restrictions, the respective rights of access held by onshore and

---

[1]  Although named defendants in the trial court, the Millers do not participate in this appeal.

[2]  EFAC does not state the facts in its brief in accordance with our standard of review, contrary to Indiana Appellate Rule 46(A)(6)(b).

[3]  The length of time over which the rights of access to Webster Lake have been litigated in the Kosciusko Circuit Court implicates the rights previously held by the predecessors-in-interest of EFAC, the Powells, and the Millers, but for clarity of our discussion we simply refer to the present parties.

offshore property owners.  In 1994, the court entered an order that established the lakeshore rights of the onshore and offshore property owners.

[3]     Pursuant to a November 2007 order of the court:

> As a means of enforcing this Court's prior orders in this case, any party alleging that [EFAC] has acted or failed to act in violation of this Court's [1994 judgment] shall file a separate lawsuit alleging that [EFAC] has acted or failed to act in violation of this Court's [1994 judgment] . . . .  The action or decision of [EFAC] will not be reversed unless such action or decision is arbitrary, unreasonable[,] or capricious.

Ex., Tr. Vol. 3 at 30.[4]

[4]     In January of 2014, the trial court approved onshore and offshore rights of access to Webster Lake and, in particular, open shoreline and pier-assigned shoreline for each onshore and offshore owner.  EFAC also sought to have the trial court adopt certain regulations EFAC had proposed.  In its order on that request, the court stated in relevant part as follows:

> Although not mandated by the Court, the regulations as adopted and applied by [EFAC] should strive to:
>
> a)     Allow/provide for a five (5) foot clearance on both sides [for a total of ten (10) feet] of the dividing line between

---

[4] Our review of the numerous trial court documents relevant to this appeal has been hampered by the parties not including those documents in appendices, despite the clear guidance of Indiana Appellate Rule 50(A), and their citations instead to unmarked and unpaginated exhibits.  Our page references to those exhibits are based on the .pdf pagination of the electronically filed transcript.

pier sites so that a ten (10) foot buffer zone may exist between all facilities and equipment utilized on the pier sites; and

b)      Burden any one on-shore owner with only one (1) off-shore pier site.

*Id.* at 43 (brackets in original).  And the court adopted the following rules proposed by EFAC:

Pier Assignment [is defined as a]n allotted space along the Lake Webster shoreline that is assigned to an owner.  All piers are privately owned and shall not be accessed without the permission of the owner.

* * *

2.      ALLOWABLE WIDTH

The maximum allowable width* for a shoreline pier space assigned to a lakefront property owner is 24 feet.  Lakefront owners who own at least 24 feet or more of shoreline frontage shall be allotted a pier assignment up to 24 feet.  Lakefront owners owning less than 24 feet of shoreline frontage shall be allotted a pier assignment up to the limited frontage owned (i.e. if 22 feet is owned the lakefront assignment shall be up to 22 feet wide[).]  If a lakefront owner owns less than 16 feet of shoreline, that lakefront owner shall be allotted at least 16 feet for their pier assignment.  The maximum allowable width for a shoreline pier space assigned to a non-lakefront property owner is 16 feet.  Piers shall be placed a safe and reasonable distance apart from each other with a minimum distance between pier assignments of two feet.

*Width refers to space used by an assigned owner for pier sections, watercraft, or any other personal property that takes up space in the water or along the shoreline. Measurement is the total width taken from the far left item to the far right item (for example, pier, boat, jet ski, securing pole/auger, etc.).*

3.    LAKEFRONT PROPERTY OWNERS

[L]akefront property owner[s'] shoreline pier placement[s] shall be considered permanent unless [a] lakefront property owner agrees to a change in writing that has been approved by [EFAC] in writing. . . .

4.    NON-LAKEFRONT PROPERTY OWNERS

Non-lakefront property owners' shoreline pier locations are assigned by [EFAC] on a first-come, first-served basis. Once the shoreline locations are assigned and approved in writing by the [EFAC], the locations are intended to be permanent . . . .

*Id.* at 47-48 (emphasis added). In April of 2014, the court further ordered as follows: "Onshore owners' pier assignments will continue from year to year and be presumed permanent. An offshore pier assignment/location, in accordance with the 1994 judgment, may be changed only for [a] substantial change of circumstances making the prior assignment unreasonable under current facts and circumstances. . . ." *Id.* at 62.

[5]    The Powells are offshore property owners with an assigned pier on Webster Lake. There is no dispute that the Powells' pier assignment and location are consistent with the trial court's orders. The Millers are onshore property

owners who also have an assigned pier on Webster Lake pursuant to the court's orders. The Millers' lakefront property borders the Powells' pier assignment on the western border of the Powells' assignment.

[6] Pursuant to the court's approved shoreline assignments around Webster Lake, the Millers owned fifty feet of shoreline property and Pier Space 34. The court's orders designate that the Millers have twenty-four feet of their shoreline "for Pier 34" and ten feet "of open shoreline." Appellant's App. Vol. II at 30; *see also* Ex., Tr. Vol. 3 at 53. The court assigned the remaining sixteen feet of the Millers' shoreline to the Powells "for Pier 35A," which the Powells owned. Appellant's App. Vol. II at 30. The court's orders do not mandate a specific location within those assignments for either pier's placement.[5] *See* Ex., Tr. Vol. 3 at 53.[6]

[7] In 2015, the Millers sought to have a boat lift added to the eastern side of their pier without relocating their pier. With an existing boat lift already in place on the western side of the Millers' pier, and using their pier's location as the

---

[5] In its brief on appeal, EFAC repeatedly asserts that "the trial court fixed the locations of the piers." *E.g.*, Appellant's Br. at 6-7. In support of that statement, EFAC cites not to a court order but to the direct examination testimony of Gerry Powell, who said no such thing. Tr. Vol. 2 at 11, *cited in* Appellant's Br. at 6-7.

[6] The version of this exhibit submitted on appeal is not clear in that it has grayed-out and blacked-out text. It appears from the legible text that the trial court assigned to the Powells an additional four feet of open shoreline, but it is not clear how that four feet might have factored into the distribution of the fifty feet of shoreline owned by the Millers. In any event, the apparent four-foot allocation is not discussed by the parties on appeal, and neither do the parties challenge the trial court's finding that the fifty feet of shoreline owned by the Millers is distributed between ten feet of open shoreline, twenty-four feet for the Millers' pier, and sixteen feet for the Powells' pier.

centerline of their pier assignment, the addition of the new boat lift would have left "insufficient space for the Powell[s'] boat and pier as assigned" by the court. Appellant's App. Vol. II at 30. Accordingly, the Millers requested permission from EFAC to have the Powells' pier removed so the Millers could install a second boat lift on their pier. The Powells objected, but EFAC agreed with the Millers and ordered the Powells to remove their pier. The Powells then filed a lawsuit against EFAC and the Millers and argued that EFAC's decision was arbitrary, capricious, or unreasonable.

[8] The trial court entered a preliminary injunction against EFAC. Thereafter, in September of 2016, the trial court entered the following findings of fact and conclusions thereon after a bench trial:

> 13. The Court's [January 2014] Order . . . approving the then[-]existing pier assignments approved not only the then[-]existing pier placements (actual and based on prior usage)[] but also the assignment of a certain location zone for [a] pier and other equipment usage (based on actual prior usage) . . . .

> 14. It was further the Court's intention, and order, that the pier assignment . . . was . . . based on an allocation of the frontage of each lot and created a zone of use for these assignments . . . , which would not be subject to future change except as specifically provided by the Court's Orders . . . .

> 15. It was further the Court's intention, and order, that each assignee of a pier assignment be free to fully . . . utilize their zone assignment, but not so that this usage would affect others, especially adjacent pier . . . assignments . . . .

*16.     Therefore, the proposed change of actual use of an area by an assignee cannot be a substantial change of circumstances making the prior assignment unreasonable under current facts and circumstances.*

\* \* \*

19.     If the Powell[s'] pier is left with the 16 feet assigned . . . [the] Miller[s] will retain the same 24[-]foot zone assigned to [them] . . . and [they] are free to locate whatever structures they desire[] within the same 24[-]foot zone[] so long as this does not affect the usage of the adjacent pier assignments.

\* \* \*

23.     The judgment and various Orders . . . of this Court clearly indicate that it was the intention of this Court that . . . pier assignments for onshore owners were intended to be permanent, and offshore pier assignments were not to be changed without a significant change in circumstances.

*24.     The desire of [the] Miller[s] to place two boat lifts, one on each side of their current pier location, is not a significant change in circumstances.*

25.     The determination made by EFAC requiring the Powells to remove their pier and boat lift was necessarily arbitrary and capricious and was, as a matter of law of the case, not in conformity with the prior Judgment and Orders of this Court . . . .

26.     The placement of the Powell[s'] pier is in conformity with the Judgment and Orders . . . and no significant change in

circumstances exists which would require the elimination or relocation of the original Powell pier assignment.

*Id.* at 30-32 (emphases added). This appeal ensued.

# Discussion and Decision

[9] EFAC appeals the trial court's judgment for the Powells. In its judgment, the trial court entered findings of fact and conclusions thereon following a bench trial. Our standard of review in such appeals is clear:

> We . . . apply a two-tiered review, and affirm when the evidence supports the findings, and when the findings support the judgment. We shall not set aside the findings or judgment unless they are clearly erroneous, and we must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Findings of fact are clearly erroneous only when they have no factual support in the record, and a judgment is clearly erroneous if it applies the wrong legal standard to properly found facts.

*Wysocki v. Johnson*, 18 N.E.3d 600, 603-04 (Ind. 2014) (citations, quotation marks, omissions, and alterations omitted). And insofar as this appeal requires this court to interpret prior orders of the trial court, we interpret those orders *de novo* and without deference to the trial court's judgment. *Deen-Bacchus v. Bacchus*, 71 N.E.3d 882, 885 (Ind. Ct. App. 2017).

[10] As an initial matter, we reject EFAC's argument that our case law requires this court to defer to EFAC's decision against the Powells. While the trial court's orders direct that that court would not reverse a decision of EFAC unless that

decision was "arbitrary, unreasonable[,] or capricious," Ex., Tr. Vol. 3 at 30, that language establishes the burden of proof in the trial court, not the standard of appellate review.[7] As such, insofar as EFAC argues that the Powells did not meet their burden of proof in the trial court, we review that argument under our usual standards of review.

[11] We thus turn to the merits of EFAC's argument on appeal, namely, that the trial court's judgment is erroneous because the court misinterpreted its prior orders. In particular, EFAC asserts that, absent more specific instruction from the trial court, EFAC had interpreted the court's pier assignments to require each pier to be placed in the center of each assignment.[8] In light of that interpretation, EFAC continues, it concluded that it lacked the authority to order the Millers to move their pier within their assignment due to the "permanent" nature of onshore pier assignments, and, instead, EFAC was required to order the Powells to remove their pier altogether. Appellant's Br. at 24-25.

[12] But there is nothing ambiguous about the court's orders in the first instance, and, as such, the trial court properly rejected EFAC's interpretation of those

---

[7] EFAC is not a state agency or other governmental unit, and its decision against the Powells was not made pursuant to the Administrative Orders and Procedures Act, Ind. Code Article 4-21.5, or other statutory procedures.

[8] To be sure, EFAC also asserts that "[n]owhere in the trial court's prior orders does it mention a 'location zone'" for the pier assignments, which is plainly incorrect insofar as the pier assignments themselves are designated zones for the location of piers. Appellant's Br. at 24; *see* Ex., Tr. Vol. 3 at 53. And, as noted above, EFAC also repeatedly states (contrary to its apparent argument on appeal) that the trial court "fixed the location of the piers," which is also plainly incorrect. *See* footnote 5, *supra* at 6.

orders. It is true that the trial court's prior orders designated "pier assignments" in terms of a linear footage along the shoreline and make no mention of a mandatory location for a pier within a given assignment. Ex., Tr. Vol. 3 at 53. However, the court's orders plainly provide a mechanism for measuring pier assignments. Namely, the court's orders direct that pier assignments are to be measured based on an owner's usage "from the far left . . . to the far right," with any personal property within that area being demonstrative of the owner's usage. *Id.* at 48. Indeed, the court's directions identify a "pier" as an object that may exist at either end of the assignment for measurement purposes. *Id.* That is, the court's orders expressly recognize that the location of a pier may be anywhere within the pier assignment. As such, the court's unambiguous prior orders preclude measuring the width of a pier assignment by establishing a pier within that assignment as the centerline. EFAC's interpretation disregards the court's clear instructions.

[13] EFAC's interpretation also disregards the trial court's clear language that the width of a pier assignment is inclusive of *any* use that owner might make of that assignment. Again, the court's orders define pier assignments as the total shoreline available to onshore and offshore owners for their use of any "pier sections, watercraft, or any other personal property that takes up space in the water or along the shoreline." *Id.* EFAC's interpretation that the pier is the

centerline and that usage is measured away from that point[9] is not consistent with the trial court's orders.

[14] Further, EFAC's reliance on the permanent nature of an onshore owner's pier assignment and disregard of the permanent nature of an offshore owner's pier assignment is also contrary to the court's orders. Those orders expressly refer to *both* established onshore pier assignments *and* established offshore pier assignments—which includes both the Millers and the Powells—as "permanent" assignments. *Id.* As such, for that additional reason the trial court did not err when it rejected EFAC's interpretation that pier assignments should be centered around pier location to accommodate the permanent nature of established onshore pier assignments and without considering the permanent nature of established offshore pier assignments. Thus, the trial court's interpretation of its prior orders is based on the unambiguous language of those orders, and EFAC has not shown that the trial court erred when it rejected EFAC's contrary interpretation.

[15] Finally, we note that, although both established onshore pier assignments and established offshore pier assignments are permanent assignments under the court's orders, an offshore assignment nonetheless "may be changed only for [a] substantial change of circumstances making the prior assignment unreasonable

---

[9] Insofar as EFAC's argument is that an onshore owner can expand beyond the maximum twenty-four feet by simply expanding use within an assignment, that argument is contrary to the trial court's express limitations to the width of onshore owners' pier assignments. Ex., Tr. Vol. 3 at 48.

under current facts and circumstances." *Id.* at 62. The trial court found and concluded that the Millers' desire to add a second boat lift to their pier was merely a new way to use their pier and, as such, was captured by their original assignment and did not constitute a substantial change of circumstances that made the prior assignment to the Powells unreasonable under the current facts and circumstances. On appeal, EFAC does not directly challenge the trial court's findings or conclusions in this regard; rather, EFAC's only argument is that the trial court erred when it interpreted the court's prior orders. As explained above, we reject EFAC's arguments. Nonetheless, we also conclude that the trial court's findings that there has been no substantial change in circumstances is supported by the record and that its judgment is supported by the findings. As such, the court's judgment is not clearly erroneous, and we affirm.

[16] Affirmed.

Riley, J., and Bradford, J., concur.